

**SIGNED this 12th day of January, 2012.**

_____
**LEIF M. CLARK**
**UNITED STATES BANKRUPTCY JUDGE**

_____

# United States Bankruptcy Court

**Western District of Texas**
**San Antonio Division**

| | |
|---|---|
| *In re* | BANKR. CASE NO. |
| TOLBERT S. WILKINSON & SUZANNE T. WILKINSON | 07-50189 |
| *Debtors* | CHAPTER 7 |
| TOLBERT S. WILKINSON & SUZANNE T. WILKINSON<br><br>    *Plaintiffs,*<br>v.<br><br>EMC MORTGAGE & JPMORGAN CHASE<br><br>    *Defendants.* | ADV. NO. 11-05056 |

**MEMORANDUM OPINION**

On April 25, 2011, more than two years after receiving a discharge in their Chapter 7 bankruptcy, the Wilkinsons (the "Wilkinsons") filed an Adversary Complaint against EMC Mortgage ("EMC") and JP Morgan Chase ("Chase") asserting various claims in connection with the Defendants' conduct following the Debtors' discharge. The Wilkinsons filed their First Amended Original Complaint to Sell Real Property Free and Clear of Liens, for Contempt, Declaratory Judgment, to Determine Secured Status, and for Damages ("Amended Complaint") on August 10, 2011. On August 24, 2011, the Defendants filed a joint Motion to Dismiss Certain Claims in Plaintiffs' Amended Complaint. The Wilkinsons filed a Response to the Motion to Dismiss on September 7, 2011. This Memorandum Opinion constitutes the court's ruling on the motion to dismiss.

The relevant facts as laid out in the Wilkinsons' Amended Complaint are as follows:

**Background**

On March 31, 1987, the Wilkinsons purchased a 52 acre tract of land in Bandera County. The Wilkinsons' homestead is located on this property. The Wilkinsons also owned two additional adjoining tracts of land: one consisting of approximately 10.67 acres and the other consisting of approximately 50 acres. There are no liens on the 10.67 acre tract.

On January 31, 2007 the Wilkinsons filed for relief under Chapter 13 of the Bankruptcy Code. Their case was converted to a case under Chapter 7 on July 28, 2008. The Wilkinsons received their discharge on February 18, 2009. In the Wilkinsons' Chapter 13 case they claimed the entire 52 acre tract of land as their exempt homestead. The Chapter 13 Trustee objected to this claim of exemption and the parties eventually entered into an Agreed Order on July 23, 2007. This Order was later aside, however, for failure to sufficiently identify the real property at issue. Accordingly, the Wilkinsons continued to litigate the issue with the Chapter 7 Trustee after the case was converted. Ultimately, in January, 2010, the court entered an order clarifying the Wilkinsons' homestead exemption. This order [Docket No. 329] clarified that the Wilkinsons' exempt homestead consisted of a small portion (1.22 acres) of the 52 acre tract (plus a small easement to maintain the Wilkinsons' septic system) as well as the entire 10.67 acre tract.

The Wilkinsons' largest creditors, the Haleys, had filed a medical malpractice suit against Dr. Wilkinson in state court. This suit was ultimately settled, and part of this settlement provided for the Chapter 7 Trustee to sell to the Wilkinsons 3.8 acres of property (from the 52 acre tract) adjoining the Wilkinsons' homestead (which was also located on the 52 acre tract). The court approved this settlement and entered an agreed order in November, 2009 authorizing the Chapter 7 Trustee to sell this estate property to the Wilkinsons free and clear of liens [Docket No. 323]. This resulted in the Wilkinsons receiving approximately 5 acres of property in total: 1.22 acres as their exempt homestead and 3.8 acres sold to them free and clear by the Chapter 7 Trustee. The remainder of the 52 acre tract (consisting of about 47 acres), as well as the adjoining 50 acre tract (for a total of 97 acres), were sold by the Chapter 7 Trustee free and clear of liens to Scott Bliss

for $545,000. The court entered an order approving the Trustee's motion to sell this property in September, 2010.

EMC claimed to be the lienholder on the 52 acre tract of land. The Wilkinsons listed EMC's lien as disputed in their amended bankruptcy schedules. EMC allegedly acquired the note from the original noteholder through a series of assignments.[1] EMC serviced and attempted to collect on this note as described below.

In March, 2007 EMC filed a proof of claim in the amount of $122,534.29. EMC filed a motion for relief from stay in October, 2008, but withdrew the motion before a hearing could be held. The Wilkinsons allege that EMC withdrew the motion because EMC knew that it would be unable to prove its ownership of the note.[2] The court authorized the Chapter 7 Trustee to sell the remaining acres from the 52 acre tract (less the 1.22 acres consisting of the Wilkinsons' exempt homestead and the 3.8 acres sold to the Wilkinsons free and clear in November, 2009) as well as the adjoining 50 acre tract to Scott Bliss in September, 2010. Following the sale of this property to Scott Bliss free and clear of liens, in October, 2010, the Chapter 7 Trustee filed an objection to EMC's claim, which the court granted by a default order (after EMC failed to respond) in November, 2010 [Docket No. 347]. The order stated, in pertinent part, that "Claimant has no evidence that it is the holder of the Note. This claim will not be paid a dividend by the Trustee in this case." EMC filed a motion to reconsider the court's order granting the Chapter 7 Trustee's objection to EMC's claim in April, 2011 [Docket No. 380]. The court denied EMC's motion to reconsider in July, 2011 [Docket No. 400].

On December 7, 2010—after the court had already entered two orders authorizing the sale of property free and clear of all liens, including EMC's lien—EMC foreclosed on the 52 acre tract of land. At the foreclosure, EMC was the purchaser, by substitute trustee's deed (prepared by EMC's attorneys) for $120,666.18. The language recited in the substitute trustee's deed indicates that EMC and its counsel knew: 1) that the Wilkinsons had a pending bankruptcy case; 2) that Mr. Osherow was the Chapter 7 trustee; and 3) that Mr. Osherow had conveyed part of the 52 acre tract to Scott Bliss.[3]

---

[1] To date, EMC has been unable to produce a true copy of this note showing that EMC is the holder of the note. *See In re Wilkinson*, Case No. 07-50189 (Bankr. W.D. Tex. July 22, 2011) (Docket No. 400).

[2] In their response to EMC's lift stay motion, the Wilkinsons requested proof of EMC's ownership of the note, including the various assignments that allegedly led to EMC's ownership. The Wilkinsons maintains that they still have not received any of the information they requested from EMC with respect to EMC's ownership of the note.

[3] The deed stated:

"Whereas, Randolph N. Osherow, Chapter 7 Trustee of the Bankruptcy Estate of Tolbert S. Wilkinson, M.D. and Suzanne T. Wilkinson, conveyed subject property to Scott Bliss by Chapter 7 Trustee's Warranty Deed, under File No. 00186221, dated 10/12/2010, recorded in the official records of the County Clerk, Bandera County, Texas;

Whereas, EMC Mortgage Corporation, the Holder of said Note and Deed of Trust as authorized by and provided in said Deed of Trust, appointed the undersigned to serve as Substitute Trustee(s) and to enforce

3

When the Wilkinsons discovered that EMC had foreclosed on their homestead and planned to evict them from the property, the Wilkinsons contacted the Chapter 7 Trustee. They also sought permission to sue EMC for contempt for violating the court's sale orders.[4] EMC rescinded the foreclosure sale. EMC did not, however, release its lien on the 52 acre tract of land (despite the sale, free and clear, of almost the entire tract to the Wilkinsons and to Scott Bliss). It still asserts that lien.

Based on the facts described above, the Wilkinsons have alleged the following claims against EMC: 1) Sale of the Wilkinsons' homestead free and clear of liens; 2) marshaling; 3) determination of secured status; 4) equitable subordination; 5) contempt, for: a) violation of the automatic stay; b) violation of the discharge order; c) violation of court orders authorizing the sale of property free and clear of liens; d) violation of the court order disallowing EMC's proof of claim; 6) unreasonable collection efforts; 7) accounting; 8) violation of the Fair Debt Collection Practices Act; and 9) fraud.

EMC filed a motion to dismiss every one of the Wilkinsons' claims for failure to state and claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure and for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

**Discussion**

1. Standards for Rule 12(b) Motions to Dismiss

A complaint may be dismissed for failure to state claim under Rule 12(b)(6). The Supreme Court has recently elaborated on the standard to be applied for motions to dismiss for failure to state a claim. In *Bell Atlantic Corp. v. Twombly*, the Court stated that Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests[.]" 550 U.S. 544, 555 (2007) (internal quotations and citation omitted). When such a complaint is attacked under Rule 12(b)(6), the plaintiff is obligated, with regard to the grounds upon which the complaint rests, to furnish more than labels and conclusions. "[A] formulaic recitation of the elements of the cause of action will not do[.]" *Id*.; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (stating that conclusory factual allegations, formulaic or threadbare recitations of the elements of a claim, and bare legal conclusions are not presumed to be true). "Factual allegations must be enough to raise a right to relief above the speculative level," and must do more than simply create a "suspicion of a legally

---

the trust, the said Tolbert S. Wilkinson and/or Suzanne Wilkinson and/or Scott Bliss having made default in the payment of said note according to the terms, tenor and effect thereof;

[4] The Wilkinsons do not state whether the Trustee ever granted such permission.

cognizable right of action." *Twombly*, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, FED. PRAC. AND PROC. § 1216, pp. 235-236 (3d ed. 2004)).

The Court further explained that "[a]sking for plausible grounds to infer [the existence of an element of a cause of action] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [of that element]." *Id*. at 556. Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Id*. In support of this approach, the Court observed that "something beyond the mere possibility of loss causation must be alleged, lest a plaintiff with 'a largely groundless claim' be allowed to 'take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value'....[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Id*. at 558. (internal citations and quotations omitted). Nonetheless, in reviewing a 12(b)(6) motion, the court must accept all well-pleaded facts as true. *Broyles v. State ex. rel. Abbott*, 2010 U.S. App. LEXIS 12151, at *5 (5th Cir. 2010).

Finally, under Rule 12(b)(1), a complaint may be dismissed for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). *See also Champions Truck & Equip. Inc. v. Patterson*, 2008 U.S. Dist. LEXIS 55343, at *5 (S.D. Tex. July 21, 2008) ("'A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.'") (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998)). Bankruptcy courts have limited subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b). Additionally, if a plaintiff lacks standing to bring a particular claim, the court lacks the subject matter jurisdiction to hear and decide that claim. *See Osherow v. Wells Fargo Home Mortgage, Inc.*, 450 B.R. 630, 631 (Bankr. W.D. Tex. 2011) ("Standing is a species of subject matter jurisdiction, in that, if a party lacks standing, the court lacks subject matter jurisdiction to hear the matter, and it must be dismissed."). "When examining a factual challenge to subject-matter jurisdiction under Rule 12(b)(1), which does not implicate the merits of plaintiff's cause of action, the district court has substantial authority 'to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Champions Truck & Equip. Inc. v. Patterson*, 2008 U.S. Dist. LEXIS 55343, at *5 (quoting *Garcia v. Copenhaver, Bell & Assocs.,* 104 F.3d 1256, 1261 (11th Cir. 1997)).

2. Request for Authorization to Sell Property Free and Clear of Liens

In their first claim for relief, the Wilkinsons seek to sell a certain number of acres from their homestead property free and clear of liens. Their homestead now consists of the original exemption of the 10.67 acre tract that has always been free of liens, the original 1.22 acres exempted from the 52 acre tract, and an adjoining 3.8 acres from the 52 acre tract that the

Chapter 7 Trustee sold to the Wilkinsons free and clear of liens in November, 2009. The proposed sale seeks to sell the 3.8 acres from the 52 acre tract as well as approximately two acres from the 10.67 acre tract. The Wilkinsons seek this court's authorization to sell the property to Scott Bliss free and clear, with any valid liens thereon attaching to the proceeds of the sale. The Wilkinsons have made this request pursuant to section 363 of the Bankruptcy Code.

Section 363 provides that, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). There are a number of problems with the Wilkinsons' request for authorization to sell their property pursuant to section 363. First, as explained by the bankruptcy court for the Eastern District of Virginia,

> [s]ection 363(f) conditionally authorizes a trustee to sell property under §§ 363(b) or (c) free and clear of any interest in the property. Section 363(b) states that 'the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, *property of the estate*,' 11 U.S.C. § 363(b)(1), while § 363(c) states that '. . . the trustee may enter into transactions, including the sale or lease *of property of the estate*, in the ordinary course of business, without notice or a hearing.' Therefore, sales of property under § 363(f) are limited to sales of property of the estate.

*In re Signal Hill-Liberia Ave. Ltd. Partnership*, 189 B.R. 648, 652 (Bankr. E.D. Va. 1995); *see also In re Gonzales*, 2010 Bankr. LEXIS 3838, at *4 (Bankr. N.D. Tex. Oct. 27, 2010) ("Section 363 of the Bankruptcy Code is a tool only for a Chapter 7 Trustee to use in the context of a Chapter 7 case. It is not the Debtor's role (i.e., a debtor is not the party with standing) to move to sell property of the estate in a Chapter 7 case—even if the general deadline for objecting to exemptions has elapsed and the property is perhaps no longer deemed 'property of the estate.'"); *Central State Bank v. McCabe (In re McCabe)*, 302 B.R. 873, 877 (Bankr. N.D. Iowa 2003) ("The Trust property is not property of Debtors' bankruptcy estate. Sales of property under § 363(f) are limited to sales of property of the bankruptcy estate. Furthermore, only a trustee is entitled to utilize the Bankruptcy Code to sell property free of liens.") (internal citation omitted).

Second, and perhaps more importantly, because the property at issue is not property of the bankruptcy estate, this court lacks the subject matter jurisdiction to entertain the Wilkinsons' claims with respect to this property. "[W]hen property is transferred out of a bankruptcy estate free and clear of all liens, the bankruptcy court ceases to have jurisdiction over that property." *Borrego Springs Bank, LLC v. Skuna River Lumber, L.L.C. (In re Skuna River Lumber, LLC)*, 564 F.3d 353, 355 (5th Cir. 2009). Nor is the Wilkinsons' filing of this adversary proceeding to determine the parties' various rights with respect to this property sufficient to grant jurisdiction. As further explained by the Fifth Circuit,

> [the debtor] asserts that the bankruptcy court retained jurisdiction over the property [previously sold from the estate free and clear of liens] by virtue of the ongoing adversary

proceeding adjudicating the priority and validity of [the creditor's] claims in relation to [the debtor's] other creditors. We disagree. Again, we are persuaded by the reasoning of the Seventh Circuit, which addressed a similar situation in *In re Edwards*, a case in which a creditor sought to rely on an adversary proceeding as a means of reviving the court's jurisdiction over property already sold from the estate:

> 'The adversary complaint could not invoke the jurisdiction of the bankruptcy court. [The creditor] was seeking a determination of its right to property that had passed outside that court's control when the property was sold free and clear of all liens. Since the property was no longer part of the bankrupt estate and since a determination of rights to it would not affect any dispute by creditors over property that was part of the bankruptcy estate, the bankruptcy court had no jurisdiction to determine rights to the property.'

*Id*. (quoting *In re Edwards*, 962 F.2d 641, 643 (7th Cir. 1992)). Accordingly, the court does not have subject matter jurisdiction over this claim.

Similarly, the court does not have jurisdiction over property that has been properly exempted from the bankruptcy estate. *See IRS v. Luongo (In re Luongo)*, 259 F.3d 323, 335 (5th Cir. 2001) ("Property exempted under § 522 is removed from the estate for the benefit of the debtor."); *Bell v. Bell (In re Bell)*, 225 F.3d 203, 216 (2d Cir. 2000) ("It is well-settled law that the effect of . . . exemption is to remove property from the estate and vest it in the debtor."); *In re Gamble*, 168 F.3d 442, 443 (11th Cir. 1999) (noting that "exempt property is not part of the bankruptcy estate"); *Taylor v. Freeland & Kronz*, 938 F.2d 420, 422 (3d Cir. 1991) ("The property so exempted is no longer considered property of the bankruptcy estate."); *see also Graziadeai Graziadei v. Graziadei (In re Graziadei)*, 32 F.3d 1408, 1410 n.2 (9th Cir. 1994) (bankruptcy court lacked jurisdiction over homestead property because it was exempt and therefore had no conceivable effect on the estate); *Garcia v. United States (In re Garcia)*, 2002 U.S. Dist. LEXIS 20233, at *6 (S.D. Fla. 2002) (bankruptcy court lacked jurisdiction to order distribution of exempt property); *Wesche v. United States, IRS (In re Wesche)*, 178 B.R. 542, 543 (Bankr. M.D. Fla. 1995) (bankruptcy court lacked jurisdiction to determine the rights of various parties in exempt property).

All of the property at issue in the Wilkinsons' Amended Complaint has been, by the Wilkinsons' own assertions, either exempted from the bankruptcy estate or sold by the Chapter 7 Trustee free and clear of liens (to the Wilkinsons or to Scott Bliss). The court thus lacks subject matter jurisdiction to adjudicate this claim. For these reasons, the Wilkinsons' request for authority to sell their homestead property free and clear of liens must be dismissed pursuant to Rule 12(b)(1). Resolution of this claim will have absolutely no effect on the administration of the Wilkinsons' bankruptcy estate and thus cannot be brought in this court.

3.  Determination of Secured Status

The Wilkinsons also seek a determination of secured status with respect to EMC's lien on the 52 acre tract, which includes part of the Wilkinsons' homestead. Specifically, the Wilkinsons have requested that the court determine the nature, extent, validity, priority and secured status of EMC's lien, and the res judicata or collateral estoppel effect of this Court's orders authorizing the sales of property of the estate to the Wilkinsons and Scott Bliss as well as the court's order denying EMC's claim. While this request for relief also involves property that is no longer property of the estate, the court retains the jurisdiction to interpret its own orders. *See Nat'l Benevolent Ass'n of the Christian Church v. Weil, Gotshal & Manges, LLP (In re Nat'l Benevolent Ass'n of the Christian Church),* 333 Fed. Appx. 822, 826 (5th Cir. 2009) (noting a bankruptcy court has the authority to interpret its own orders); *Auto. Fin. Corp. v. Ray Huffines Chevrolet, Inc. (In re Parkway Sales & Leasing, Inc.)*, 411 B.R. 337 (Bankr. E.D. Tex. 2009) (recognizing bankruptcy court's "inherent authority to interpret and enforce its own orders" and interpreting the preclusive effect of an order sustaining the trustee's objection to a claim); *Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 428 B.R. 43, 56-57 (S.D.N.Y. 2010) (noting that "[i]t is well-settled that bankruptcy courts have … corollary jurisdiction to interpret and enforce their own orders carrying out the provisions of the Bankruptcy Code") (citing 11 U.S.C. § 105(a)). The relief requested merely requires the court to interpret and enforce prior orders of this court. Thus, the court will not dismiss this claim.

4. Marshaling

The Wilkinsons' marshaling claim requests that the court direct EMC to seek satisfaction of their lien against the 52 acre tract "from the proceeds of the sale attributable to the non-exempt portion of the realty" rather than from the portion of the property that the Wilkinsons properly exempted from the bankruptcy estate. In short, the Wilkinsons request that EMC satisfy its claim (if any) from property of the bankruptcy estate rather than from property of the Wilkinsons.

In general, the doctrine of marshaling provides that "a senior lien creditor with a right to proceed against more than one asset of a debtor must, in fairness, attempt to satisfy his claim(s) from assets that are not encumbered with junior liens." *In re San Jacinto Glass Indus., Inc.*, 93 B.R. 934, 937 (Bankr. S.D. Tex. 1988) (quoting *Meyer v. United States*, 375 U.S. 233, 237 (1963)). There are three requirements for a marshaling claim: "(1) the contesting claimants both have secured claims against a common debtor; (2) the assets or funds subject to marshaling belong solely to the common debtor; and (3) one of the lienholders, alone, has the right to resort to more than one fund or asset of the debtor. *Id*. The flaw in the Wilkinsons' request for marshaling is readily apparent. The Wilkinsons have requested that EMC be directed to satisfy its claim from property of the estate before satisfying its claim from property of the Wilkinsons. Marshaling only applies if competing creditors have claims against a common debtor. *Id*. Here, there are two "debtor" entities involved—the bankruptcy estate and the Wilkinsons. So, the marshaling claim is dismissed for failure to state claim pursuant to Rule 12(b)(6).

8

5.  Equitable Subordination

The Wilkinsons assert that EMC's claim, to the extent that it even has a claim, should be equitably subordinated for the purposes of distribution pursuant to section 510 of the Code due to "the repeated misconduct by the Defendants as set forth in [the Wilkinsons'] complaint." (Compl., p. 13.) First, this court has already held that EMC has no claim against the bankruptcy estate and no right to be paid a dividend by the Trustee. [*See* Docket Nos. 347, 400.] Second, even if EMC did have a claim against the bankruptcy estate, the Wilkinsons lack standing to bring a claim against EMC for equitable subordination. As explained by the Second Circuit in an unpublished opinion:

> The purpose of equitable subordination is to remedy wrongdoing by one creditor, in the interests of the remaining creditors; as a debtor, Riccitelli has no standing to seek relief under § 510. *See In re Lockwood*, 14 B.R. 374, 381 (Bankr. E.D.N.Y. 1981) ("The proper party to seek equitable subordination is the trustee."); *see also In re Weeks*, 28 B.R. 958, 960 (Bankr. W.D. Okla. 1983) ("The fundamental aim of equitable subordination is to undo or offset any inequality in the claimed position of a creditor that will produce injustice or unfairness to other creditors in terms of the bankruptcy results.") (internal citation and quotation marks omitted).

*Riccitelli v. Sensenwich (In re Riccitelli)*, 14 Fed. Appx. 57, 58-59 (2d Cir. 2001) (unpublished opinion). *See also In re Thompson*, 965 F.2d 1136, 1147 (1st Cir. Mass. 1992) ("As a general rule, absent leave of court, the chapter 7 trustee alone may interpose objections to proofs of claim."); *Balcor/Morristown Ltd. Pshp. v. Vector Whippany Assocs.*, 181 B.R. 781, 791 (D.N.J. 1995) ("The debtor has no standing even to raise the equitable subordination doctrine.") (citing *In re Weeks*, 28 Bankr. 958, 960 (Bankr. W.D. Okla. 1983)); *In re Parker Montana Co.*, 47 Bankr. 419, 421 (D. Mont. 1985) (as the representative for the chapter 7 estate, the trustee, and not the debtor, is the proper party to bring an action for equitable subordination). Accordingly, the Wilkinsons' claim for equitable subordination must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

6.  Contempt

The Wilkinsons seek a finding of contempt and damages against EMC for violating the following: 1) the automatic stay; 2) the discharge order; 3) the agreed order authorizing the Trustee to sell property free and clear to the Wilkinsons; 4) the order authorizing the Trustee to sell property free and clear to Scott Bliss; and 5) the order granting the Trustee's objection to EMC's claim. To succeed in a contempt proceeding, the movant "bears the burden of establishing by clear and convincing evidence: 1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply

with the court's order." *American Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000) (citing *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992)).

First, the Wilkinsons claim that EMC violated the automatic stay when, in December 2010, EMC posted for sale and sold the 52 acre tract which had been previously sold free and clear of liens to the Wilkinsons and/or Scott Bliss. Section 362(c) of the Bankruptcy Code provides:

> Except as provided in subsections (d), (e), (f), and (h) of this section—
>> (1) the stay of an act against property of the estate under subsection (a) of this section continues *until such property is no longer property of the estate*;
>> (2) the stay of any other act under subsection (a) of this section continues until the earliest of—
>>> (A) the time the case is closed;
>>> (B) the time the case is dismissed; or
>>> (C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, *the time a discharge is granted or denied*[.]

11 U.S.C. § 362(c) (emphasis added). Accordingly, because the 52 acre tract the Wilkinsons allege EMC wrongfully foreclosed upon had already been either sold by the Chapter 7 Trustee free and clear, or properly exempted from the bankruptcy estate, that property no longer constituted property of the estate. The stay no longer applied to protect that property from foreclosure.

Because the stay was no longer in effect at the time of EMC's (wrongful) foreclosure, the Wilkinsons have failed to allege facts in support of the first element of a claim for contempt for that violation. The Wilkinsons' claim for contempt and/or damages in connection with EMC's purported stay violation must therefore be dismissed for failure to state a claim under Rule 12(b)(6). *See Campbell v. San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (dismissal is proper if a complaint lacks allegations to support an essential element of the plaintiff's claim). Furthermore, even if EMC's conduct had violated the automatic stay (if the property at issue had still been property of the estate), the Wilkinsons lack standing to bring a claim for violation of the stay in connection with a creditor's efforts to obtain possession of property of the estate. *See In re Laux*, 181 B.R. 60, 61 (Bankr. S.D. Ill. 1995) (noting that "when debtor filed his chapter 7 petition, the funds [at issue] became property of the estate subject to the control of the chapter 7 trustee[,] and concluding that, "[a]ccordingly, the only party with standing to raise a violation of § 362(a)(3) [staying any act to obtain possession of property of the estate] is the trustee"); *see also In re Calvin,* 329 B.R. 589, 601 (Bankr. S.D. Tex. 2005) (stating that debtor acquires standing to assert stay violation when title to the property at issue revests in the debtor which is when the property is either "properly claimed and allowed as exempt, or abandoned by the trustee.").

Next, the Wilkinsons allege that EMC's wrongful foreclosure of the 52 acre tract violated the court's discharge order. This claim, too, must fail. A discharge under section 727 "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt *as a personal liability of the debtor*, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2) (emphasis added). Accordingly, the actions taken by EMC (however improper those actions may have been) to enforce its *in rem* rights against the property at issue did not violate, or even implicate, the section 524 discharge injunction. *See In re Hunter*, 970 F.2d 299, 310-311 (7th Cir. 1992) (stating that "the 1984 amendment to section 524 makes clear that discharge does not enjoin holders of unavoided liens from enforcing them against property of the debtor through proceedings in rem. Nonetheless, under section 524 as amended, discharge enjoins creditors from seeking to establish that the discharged debtor is personally liable for any pre-petition claim."); *Great Am. Ins. Co. v. Merchs. & Planters Bank*, 2008 U.S. Dist. LEXIS 23006, at *25 (W.D. Tenn. Mar. 21, 2008) (stating, "'a bankruptcy discharge extinguishes only one mode of enforcing a claim--namely, an action against the debtor in personam--while leaving intact another--namely, an action against the debtor in rem.'") (quoting *Johnson v. Home State Bank*, 501 U.S. 78, 84 (U.S. 1991)); *Gamble-Ledbetter v. Andra Group, L.P. (In re Gamble-Ledbetter)*, 419 B.R. 682, 701 (Bankr. E.D. Tex. 2009) (noting that in rem actions are outside the scope of the discharge injunction). The Debtors' claim for violation of the discharge injunction fails to state a claim upon which relief may be granted and therefore must be dismissed under Rule 12(b)(6).

Next, the Wilkinsons claim that EMC's wrongful foreclosure of the 52 acre tract violated the court's September, 2010 order authorizing the Chapter 7 Trustee to sell that tract (minus the Wilkinsons' homestead portion) to Scott Bliss free and clear of liens.[5] The Wilkinsons lack standing to bring a claim for violation of this sale order. "To enforce an order of the court through contempt proceedings, the moving party must be a party to that order." *Copley v. W. Va. State Tax Dep't (In re Copley)*, 2008 Bankr. LEXIS 1935, at *10 (Bankr. S.D. W. Va. June 27, 2008) (finding chapter 7 debtor lacked standing to bring action for contempt against creditor for violation of the stay because property at issue belonged to the estate, not the debtor, and debtor suffered no injury as a result of creditor's actions). Here, the order at issue authorizes the Chapter 7 Trustee to sell property of the estate to Scott Bliss free and clear of liens. As such, the Trustee (or perhaps Scott Bliss) is the proper party to assert a claim for violation of the sale order. *See Farrell Construction Co. v. Jefferson Parish, La.*, 896 F.2d 136, 140 (5th Cir. 1990) (noting that, under Rule 17(a) of the Federal Rules of Civil Procedure, "all actions in federal courts [must] be brought by the real party in interest[,]" and stating that "[t]he real party in interest is the person

---

[5] From the pleadings it appears that EMC is not seeking to dismiss the Debtors' claim for violation of the court's November 10, 2009 order authorizing the Chapter 7 Trustee's sale of the 3.8 acres from the 52 acre tract to the Wilkinsons free and clear of liens. And indeed, the Wilkinsons have adequately alleged that the sale order was in effect at the time of EMC's foreclosure and that EMC violated that sale order by seeking to enforce its lien on that property.

holding the substantive right sought to be enforced…"). Furthermore, the Wilkinsons suffered no injury as a result of EMC's alleged violation of the sale order. If anyone was injured by EMC's flouting of the court's sale order it was Scott Bliss—the free and clear purchaser of the property that EMC improperly foreclosed upon—not the Wilkinsons. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (noting that one of the requirements of constitutional standing is that "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest…").

For the reasons stated above, the Wilkinsons' claim for contempt for violation of the court's September, 2010 sale order will be dismissed for lack of standing under Rule 12(b)(1).

Finally, the Wilkinsons allege that EMC's wrongful foreclosure of the 52 acre tract violated the court's order disallowing EMC's secured claim with respect to this property. For the reasons stated in part 3 above, the court will not dismiss this count of the Wilkinsons' Amended Complaint. The Wilkinsons have standing to bring this action to the extent it involves the assertion of a lien against property sold to them by the chapter 7 trustee free and clear of liens.

7. Unreasonable Collection Efforts / Fair Debt Collection Practices Act

The Wilkinsons allege that EMC engaged in unreasonable collection efforts and violated the Fair Debt Collection Practices Act (FDCPA) when, without proper notice and in contravention of this court's prior sale orders, EMC foreclosed on the 52 acre tract. All the conduct of which the Wilkinsons complain (EMC's filing a proof of claim and lift stay motion without the ability to prove it owned the note, and EMC's foreclosure efforts) occurred after the filing of the Wilkinsons' bankruptcy petition. Accordingly, the Wilkinsons' post-petition claims of unreasonable collection efforts and violation of the FDCPA are not property of the Wilkinsons' bankruptcy estate. *See Osherow v. Wells Fargo Home Mortg., Inc. (In re Rhinesmith)*, 450 B.R. 630, 634 (Bankr. W.D. Tex. Mar. 22, 2011) (finding debtors' post-petition FDCPA and TDCA claims belonged to the debtors and not the bankruptcy estate); *Witko v. Menotte (In re Witko)*, 374 F.3d 1040, 1042-44 (11th Cir. 2004) (stating that "[p]re-petition causes of action are part of the bankruptcy estate and post-petition causes of action are not[,]" and concluding that because the debtor's legal malpractice cause of action did not exist, and could not have even been predicted, at the time he filed his bankruptcy petition, that cause of action was not property of his bankruptcy estate); *In re Patterson*, 2008 Bankr. LEXIS 1778, at *8 (Bankr. N.D. Ohio June 3, 2008) (stating that "where all the events giving rise to a cause of action occur following the filing of the petition, the cause of action is not property of the estate").

Because the Wilkinsons' unreasonable collection efforts and FDCPA claims arose post-petition, and are owned by the Wilkinsons and not the estate, this court lacks the subject matter jurisdiction to address these claims. As recently articulated by the bankruptcy court for the District of New Mexico:

> Most courts that have considered this issue have found that the bankruptcy court does not have subject matter jurisdiction over a Chapter 7 debtor's post-petition claims for violation of the FDCPA [citing numerous cases]. This Court agrees. The test for determining whether the bankruptcy court has, non-core, 'related-to' jurisdiction over a proceeding is 'whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.' A factual nexus between the alleged conduct and the Plaintiff's bankruptcy case is insufficient, in and of itself, to confer 'related to' jurisdiction on the Bankruptcy Court to hear a claim under the FDCPA. Here, Plaintiff's factual assertions in support of her claims under the FDCPA, the NM-UPA and New Mexico common law relate to post-petition actions. Therefore, such claims do not constitute property of her bankruptcy estate, and any recovery, should she prevail on these claims, would have no conceivable impact on the administration of her Chapter 7 bankruptcy estate. These claims, therefore, do not fall within the Court's limited, 'related to' non-core jurisdiction. The Court will dismiss Plaintiff's Second, Third, and Fourth claims in the Complaint due to a lack of subject matter jurisdiction.

*Atwood v. GE Money Bank (In re Atwood)*, 2011 Bankr. LEXIS 1233, at \*16-17 (Bankr. D.N.M. Apr. 7, 2011); *see also Barnhart v. Union Bank, Inc. (In re Barnhart)*, 2010 Bankr. LEXIS 471, at \*6-7 (Bankr. N.D. W. Va. Feb. 26, 2010) (stating, "[t]he Debtors' tort claims are based on alleged standards of care that exist independently from the bankruptcy case, and depend on the resolution of non-bankruptcy law. Thus, the tort claims neither arise under title 11, nor arise in a case under title 11. Moreover, the alleged actions by the Bank occurred post-petition so that any potential recovery on the claims is not property of the estate; and litigating the tort causes of action cannot affect the administration of the Debtors' bankruptcy estate. Thus, the court has no subject matter jurisdiction over Counts Two and Five, because the causes of action neither arise under title 11, arise in a case under title 11, nor relate to the Debtors' bankruptcy case.") (internal citation omitted).

This court agrees with the majority of courts that have concluded that bankruptcy courts do not have "related to" jurisdiction over a chapter 7 debtor's post-petition claims for unfair debt collection practices. Resolution of the Wilkinsons' unreasonable collection efforts and FDCPA claims will have no impact whatsoever on the Wilkinsons' bankruptcy estate. Therefore, these claims will be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

8. Accounting

The Wilkinsons' Amended Complaint also requests that the court order EMC to provide the Wilkinsons with "a full accounting and payment history reflecting what was actually done with their payments and an amortization schedule reflecting what should have been done with their loan payments for each of the loan [sic] at issue." This court does not have the subject matter jurisdiction to address the Wilkinsons' accounting claim. The Wilkinsons' accounting

claim relates to a debt that has been discharged and to property that is no longer property of the Wilkinsons' bankruptcy estate.

Section 1334 of Title 28 provides:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(a)-(b). The term 'cases under title 11' refers to the bankruptcy petition itself, which is not applicable here. *See CBI Eastchase, L.P., et. al. v. Farris, et. al. (In re e2 Communications, Inc.)*, 2005 Bankr. LEXIS 3250, at *9 n.5 (Bankr. N.D. Tex. Mar. 24, 2005). Regarding "arising under" and "arising in" jurisdiction, the bankruptcy court for the Western District of Texas explained the distinction as follows,

['arising under' jurisdiction] provides jurisdiction to courts for causes of action created under a provision of title 11. In other words, bankruptcy jurisdiction exists for 'any matter under which a claim is made under a provision of title 11.' For example, the claim of exemptions under 11 U.S.C. § 522, a claim of discrimination in violation of 11 U.S.C. § 525, and any action by a trustee under an avoiding power would all be proceedings that 'arise under' a bankruptcy case.…

Proceedings that 'arise in' bankruptcy cases are '"administrative" matters that arise *only* in bankruptcy cases. In other words, "arising in" proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.'

*Wells Fargo Home Mortg. v. Mounce (In re Mounce)*, 2009 U.S. Dist. LEXIS 76540, at *8-9, 14 (W.D. Tex. Aug. 26, 2009) (citations omitted). Lastly, "[c]ases 'related to' the bankruptcy case are those whose outcome could have any conceivable effect on the estate being administered in bankruptcy." *Morrison v. Western Builders of Amarillo, Inc. (In re Morrison)*, 555 F.3d 473, 479 (5th Cir. 2009). A civil proceeding "'need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.'" *Equity Broad Corp. v. Shubert (In re Winstar Communs. Inc.)*, 284 B.R. 40, 50 (Bankr. D. Del. 2002) (quoting *Pacor v. Higgins*, 743 F.2d 984 (3d Cir. 1984)).

The only possible avenue for this court to exercise jurisdiction over the Wilkinsons' post-discharge, state law claim for an accounting is the "related to" prong of section 1334(b). Here, however, the outcome of the Wilkinsons' accounting claim will have no impact whatsoever on the administration of their bankruptcy estate. The underlying debt has been discharged as a personal liability of the Wilkinsons and EMC has no claim against any property of the bankruptcy estate. Furthermore, the property with respect to which the Wilkinsons demand an accounting has been removed from the bankruptcy estate, either through 363 sales or through exemption. Because resolution of the Wilkinsons' accounting claim will have no an impact on the administration of their bankruptcy estate, this court lacks "related to" jurisdiction over the Wilkinsons' accounting claim. *See Mounce*, 2009 U.S. Dist. LEXIS 76540, at *21-22 (stating, with respect to post-discharge state law claims brought by a chapter 7 debtor against her mortgage company: "It is clear that paying more attorneys' fees will have an effect on [the debtor]. However, [the debtor's] claims [for breach of contract and misrepresentation] would not have an effect on her estate. As [the creditor] points out, during her bankruptcy proceeding, [the debtor] claimed her homestead as exempt property, and the bankruptcy trustee determined that no assets existed that could be administered for the benefit of [the debtor's] creditors. Thus, all of her property was in one way or another removed from the bankruptcy estate. Accordingly, [the debtor's] claims relating to mortgage payments on her homestead could not affect her estate given that the homestead was not part of the estate."). The Wilkinsons' request for an accounting is therefore dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

9. Fraud

The Wilkinsons allege that EMC committed fraud when it filed a motion for relief from stay knowing that it was not the owner or holder of the underlying note, and then later back-dated various transfer documents in an attempt to cure the gap in the chain of title. In Texas a claim for common law fraud consists of the following elements:

> (1) that a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*In re First Merit Bank*, 52 S.W.3d 749, 758 (Tex. 2001). The pleading standard for a fraud claim in federal court is governed by Rule 9(b) of the Federal Rules of Civil Procedure, requiring a plaintiff to plead fraud with particularity. *See* FED. R. CIV. P. 9(b). Rule 9(b) requires that the Wilkinsons plead enough facts to illustrate "the 'who, what, when, where, and how' of the alleged fraud." *Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). Here, the most notable element missing from the Wilkinsons' Amended Complaint is the element of reliance. Even if the court were to find sufficient the Wilkinsons'

15

allegations that EMC made a knowing misrepresentation with the intent to cause reliance thereon, the Wilkinsons have alleged no facts showing, with particularity, that any party in fact relied on EMC's allegedly false representations.[6]

The failure to allege facts in support of an essential element of a plaintiff's claim necessitates dismissal of that claim. *See Campbell v. San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). Accordingly, the Wilkinsons' common law fraud claim is dismissed for failure to state a claim under Rule 12(b)(6).

For the reasons stated above, the court will dismiss all of the Wilkinsons' claims with the exception of the claims for 1) determination of secured status; 2) violation of this court's order authorizing the Chapter 7 Trustee to sell property of the estate to the Wilkinsons free and clear of liens [Docket No. 323]; and 3) violation of the court's order denying EMC's claim [Docket No.347]. An order reflecting the court's ruling will be entered separately.

#### 

---

[6] As EMC correctly points out, the proper remedy for filing a false pleading with the court is a motion for sanctions pursuant to Rule 9011. *See Mann Bracken, LLP v. Powers (In re Powers)*, 421 B.R. 326, 337 (Bankr. W.D. Tex. 2009) ("Federal Rule of Civil Procedure 11 generally prohibits parties and/or attorneys from filing or making deliberately false pleadings or arguments to a court.").